UNITED STATES of America, Appellee,

v.

Rafael SANTA–MANZANO,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Frantz B. BELLONY,
Defendant, Appellant.

Nos. 86–1682, 86–1683.

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1987.

Decided March 10, 1988.

Francis C. Newton, Jr., Boston, Mass., for defendant, appellant Frantz B. Bellony.

Martin Lemlich, Miami Beach, Fla., with whom John H. Lipinski, Miami, Fla., was on brief, for defendant, appellant, Rafael Santa–Manzano.

Jorge E. Vega–Pacheco, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., San Juan, P.R., was on brief, for appellee.

Before BOWNES and BREYER, Circuit Judges, and LAFFITTE,[*] District Judge.

BREYER, Circuit Judge.

A federal grand jury charged appellants Frantz B. Bellony and Rafael Santa Manzano with violating the wire fraud statute, 18 U.S.C. § 1343 (1982), a statute that in relevant part prohibits the use of "wire ... communication" to "execute[ ]" a "scheme ... to defraud [or to obtain] money or property by means of false or fraudulent pretenses, representations, or promises." The jury convicted appellants both of wire fraud and of "aiding and abetting" each other in committing it. 18 U.S.C. § 2 (1982). They appeal their convictions, claiming that, at trial, the government proved a scheme to defraud that varied so dramatically from the scheme charged in the indictment, that one cannot reasonably say that the indictment charged them with the crimes of which they were convicted. See Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); United States v. Murphy, 762 F.2d 1151 (1st Cir.

* Of the District of Puerto Rico, sitting by designation.

1985). We believe that they are correct. We therefore reverse their convictions.

 The evidence, viewed most favorably to the government, shows the following. In July 1983, Victor Barranco (a confederate) persuaded a Venezuelan named Roberto Jacubowicz (the victim identified in the indictment) to give him eighteen million Venezuelan bolivars (a then depreciating currency). Barranco promised that he would give Jacubowicz two million U.S. dollars (at that time a more stable currency) in return. Barranco, however, did not give Jacubowicz the money. Rather, Barranco gave him a letter of credit for $2 million which, as Jacubowicz soon discovered, contained clauses making the letter worthless. When Jacubowicz complained, Barranco told Jacubowicz that Barranco would obtain $2 million from a Swiss bank, but, in September, Jacubowicz went to Zurich and found that Barranco could not do so. Finally, in late October, Barranco told Jacubowicz to go to San Juan where another confederate, Florentino Fernandez, would take him to the Universal Trust Company and give him $1 million in certificates of deposit. In fact, on November 16, 1983, Fernandez took Jacubowicz to appellant Bellony, who gave him the fake certificates of deposit here in question.

These facts may make out a scheme to defraud Jacubowicz, but it is not the scheme the indictment charges. The indictment, which we attach as an appendix, says that the appellants "aiding and abetting each other devised ... a scheme ... to defraud, and for obtaining money and property by means of false ... representations and promises;" that the "scheme consisted of preparing false and fraudulent certificates of deposit;" that the appellants "establish[ed] a sham office where unsuspecting buyers would be lured into purchasing these false certificates of deposit;" and that "once the money was received, the ... defendants would issue false certificates of deposit to the investors for the amount of their purchase." The indictment also lists (in two separate counts) two interstate telephone calls that appellants caused Jacubowicz to make on November 15, 1983. As read naturally, the indictment suggests a scheme to sell fake certificates of deposit. It suggests that the appellants sold fake certificates of deposit to "buyer[s]" whom they "lured into purchasing" them. But, Jacubowicz did not, in any ordinary sense of the word, "buy" or "purchase" the certificates of deposit. As far as the evidence shows, the fake certificates of deposit represented an effort, devised long after Barranco obtained Jacubowicz's bolivars, to placate Jacubowicz by convincing him (at least temporarily) that Barranco would carry out his promise to pay $2 million in U.S. dollars. With respect to what "money" or "property" the appellants obtained (namely, the bolivars) and when they obtained them (long before November 1983), the indictment is silent, if not misleading.

A constitutionally adequate indictment must "sufficiently apprise[ ] the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962) (citations omitted). The Sixth Amendment requires the government to inform the accused "'of the nature and cause of the accusation,'" *United States v. Murphy*, 762 F.2d 1151, 1154 (1st Cir.1985) (quoting *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir.1970)). And, the Fifth Amendment assures the defendant that the government will try him on the charges that the grand jury voted, not on some other "charges that are not made in the indictment against him." *Stirone*, 361 U.S. at 217, 80 S.Ct. at 273 (citations omitted). Thus, the indictment must contain "'the elements of the offense charged'" and "'fairly inform[ ] a defendant of the charge against which he must defend.'" *United States v. Serino*, 835 F.2d 924, 929 (1st Cir.1987), (quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974)) (other citations omitted).

In this case, the indictment did not specify what property was the object of the charged scheme to defraud. Nor does the record suggest that the defendant knew about the government's theory of the case before the trial. *Murphy*, 762 F.2d at 1153–55. Nor does a reading of the indict-

ment suggest that the grand jury voted to charge the defendants with the "bolivar scam," the crime the government sought to prove. Rather, the indictment suggests a different crime: scheming to issue fake certificates of deposit in return for purchase money. Thus, the indictment fails to carry out its constitutional mission. *Murphy,* 762 F.2d at 1151.

In *Murphy,* 762 F.2d at 1151, this court set aside an indictment charging that a defendant tried (through threats of force) to influence testimony of a witness. The indictment did not specify *which* testimony—which of two potential proceedings—the government had in mind. The court recognized the failure to specify the details of this important element of the crime as "plain error." The indictment in this case is more obviously defective than in *Murphy.* Its failure to specify the "money" or "property" taken is apparent; the variance between what it seems to charge in this respect and what was proved is wider; the need to correct an important procedural injustice is no less great. Given *Murphy,* we recognize the "plain error" present here. *Murphy,* 762 F.2d at 1155 (citing *Silber v. United States,* 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962) (*per curiam*) and *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)) (other citations omitted).

The government argues that it offered sufficient proof at trial to link appellants' scheme to issue the fake certificates of deposit with the "bolivar scam" to form one overall plan or scheme, for purposes of the "wire fraud" statute. That may be so (*see, e.g., United States v. Fermin Castillo,* 829 F.2d 1194, 1199 (1st Cir.1987) and cases cited therein), but the argument is beside the point. We need not decide today whether the government proved, or did not prove, a violation of the wire fraud statute. We hold only that the government did not prove the scheme it charged, and it did not charge the scheme it proved.

The government points out that not all variances are material. *See United States v. Miller,* 471 U.S. 130, 135–38, 105 S.Ct. 1811, 1814–16, 85 L.Ed.2d 99 (1985) and cases cited therein. The Supreme Court has recently held that a variance is *not* material when the government charges a large mail fraud scheme but proves a smaller one. *Miller,* 471 U.S. at 130, 105 S.Ct. at 1811; *see Fermin Castillo,* 829 F.2d at 1198 (precedents construing federal mail fraud statute, 18 U.S.C. § 1341 (1982), applicable to cases construing § 1343). *Miller,* however, involved a smaller scheme *included* in the larger one, a smaller scheme of which the indictment, reasonably read, fairly notified the defendants. The *Miller* Court specifically reaffirmed its prior holding in *Stirone* that it is *not* lawful to convict a defendant "of an offense *not charged in the indictment,*" an offense of which the indictment cannot be fairly said to give defendants notice. *Miller,* 471 U.S. at 138–39, 105 S.Ct. at 1816–17 (quoting with emphasis *Stirone,* 361 U.S. at 213, 80 S.Ct. at 271). And, that is the circumstance here.

Finally, the government argues that appellants, through their scheme to issue fake certificates of deposit, sought to obtain some property from Jacubowicz *other than* the bolivars, namely, a "statement" in which Jacubowicz would "acknowledge that he ... had ... received the amount of one million dollars" in fulfillment "of all exchange operations that he has convenanted with Mr. Victor Barranco." We note the possibility that such a statement—a kind of release—might. be considered "property" exchanged for the certificates of deposit at the time of the November 1983 transaction. *Cf. McNally v. United States,* — U.S. —, —, 107 S.Ct. 2875, 2879–80, 97 L.Ed.2d 292 (1987) (mail fraud statute's coverage "is to be interpreted broadly insofar as property rights are concerned"). By viewing Jacubowicz's signed statement as property exchanged for the certificates of deposit, the gap between the charges contained in the indictment and the proof offered at trial narrows. The government, however, did not present this case to the jury on such a theory; throughout the trial, it argued that the "property" at issue consisted of bolivars previously paid to an unindicted, and prior to trial unidentified, other person (Barranco).

Thus, the characterization of the "release" as property for the first time on appeal cannot cure the basic defects in the indictment: it did not state (and thus it did not tell the defendant) with reasonable specificity the facts making up the essential elements of the crime that the government would seek to prove at trial.

For these reasons, the judgment of the district court is

*Reversed.*

Appendix

Indictment

Criminal No. 85–320GG

Violation: Title 18 U.S.C. Section 1343 & Title 18 U.S.C. Section 2

United States of America, Plaintiff, v. Rafael Santa Manzano, Frantz B. Bellony and Florentino Fernandez, Defendants.

Filed Aug. 14, 1985

THE GRAND JURY CHARGES:

INTRODUCTION

A. At all times set forth in this indictment, and from on or about October 1983, up to and including November 17, 1983 in the District of Puerto Rico and elsewhere, all within the jurisdiction of this Court, RAFAEL SANTA MANZANO, FRANTZ B. BELLONY and FLORENTINO FERNANDEZ the defendants herein, and others to the grand jury known and others unknown, aiding and abetting each other devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representation and promises.

B. The aforesaid scheme consisted of preparing false and fraudulent certificates of deposit bearing the name of "Universal Trust" a company purportedly licensed to conduct business in the District of Puerto Rico.

C. Said codefendants did establish a sham office where unsuspecting buyers would be lured into purchasing these false certificates of deposit.

D. Said sham office was located at Edificio San Rafael, Miramar, Puerto Rico, and had a telephone number listed as (809) 724–0042.

E. Once the money was received, the above named co-defendants would issue false certificates of deposit to the investors for the amount of their purchase.

COUNT ONE

1. Paragraphs A through E are hereby realleged and incorporated herein by reference.

2. That on November 15, 1983, in the District of Puerto Rico at or about 10:00 a.m. and within the jurisdiction of this Court, RAFAEL SANTA MANZANO, FRANTZ B. BELLONY and FLORENTINO FERNANDEZ, the defendants herein and others to the grand jury known and others unknown, aiding and abetting each other, having devised and intended to devise the aforesaid scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretences, representations and promises, did cause one ROBERTO JAKNBOWICZ to transmit by means of wire, that is a telephone, signals or communications in interstate commerce from San Juan, Puerto Rico to Miami, Florida for the purpose of executing said artifice or scheme to defraud. All in violation of Title 18, United States Code, Section 1343 and 2.

COUNT TWO

1. Paragraphs A through E are hereby realleged and incorporated herein by reference.

2. That on November 15, 1983, in the District of Puerto Rico at or about 6:00 p.m. and within the jurisdiction of this Court, RAFAEL SANTA MANZANO, FRANTZ B. BELLONY and FLORENTINO FERNANDEZ, the defendants herein and others to the grand jury known and others unknown, aiding and abetting each other, having devised and intended to devise the aforesaid scheme and artifice to

defraud and for obtaining money and property by means of false and fraudulent pretences, representations and promises, did cause one ROBERTO JAKNBOWICZ to transmit by means of wire, that is a telephone, signals or communications in interstate commerce from San Juan, Puerto Rico to Miami, Florida for the purpose of executing said artifice or scheme to defraud. All in violation of Title 18, United States Code, Section 1343 and 2.