UNITED STATES of America, Appellee,

v.

John J. GILLIES, Jr.,
Defendant, Appellant.

No. 87–1704.

United States Court of Appeals,
First Circuit.

July 7, 1988.

Barbara A.H. Smith with whom Davis, Robinson & Smith, Boston, Mass., was on brief, for defendant, appellant.

S. Theodore Merritt, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

After a "jury-waived" trial, a federal district court judge convicted the appellant, James J. Gillies, Jr., of violating federal laws that provide strict punishments for previously convicted felons who possess firearms. 18 U.S.C. §§ 922(g)(1) (1982 & Supp. IV 1986) (*see* Appendix A); 924(e) (1982 & Supp. IV 1986) (*see* Appendix B). Gillies, in this appeal, makes several, rather technical, arguments: that his conduct falls outside the letter of the statute; that the indictment was defective; that the government failed to prove three prior convictions. We have found these arguments unconvincing.

1. Gillies claims that the relevant substantive statutory language does not cover his conduct. The statute, in relevant part, makes it:

*unlawful for any person—*

(1) *who has been convicted* ... of a crime punishable by imprisonment for a term exceeding one year;

. . . . .

to ship or transport in interstate or foreign commerce, any firearm or ammunition; or *to possess in or affecting commerce, any firearm* or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

§ 922(g) (emphasis added). The evidence showed that Gillies, on December 23, 1986, possessed, in Massachusetts, a gun that, in 1977, had travelled from Brazil to Florida. Gillies says that this evidence does not show that he "possess[ed] in or *affecting commerce,* any firearm." In his view, the underlined words "affecting commerce" have a limited meaning; they do not cover

simple in-state possession of a gun that, sometime in the past, arrived from out of state. We do not agree.

For one thing, the words "affecting commerce" are jurisdictional words of art, typically signalling a congressional intent to exercise its Commerce Clause power broadly, perhaps as far as the Constitution permits. *See, e.g., Heart of Atlanta Motel v. United States,* 379 U.S. 241, 258, 85 S.Ct. 348, 358, 13 L.Ed.2d 258 (1964) (interpreting statute regulating all activity that "affects [interstate] commerce" as showing congressional intent to reach as far as the Commerce Clause permits, and holding the Commerce Clause does permit Congress to forbid a policy of segregation even at a local hotel); *National Labor Relations Board v. Fainblatt,* 306 U.S. 601, 606–07, 59 S.Ct. 668, 671–72, 83 L.Ed. 1014 (1939) (interpreting term "affecting commerce" found in 29 U.S.C. § 152(7) broadly to include Congress's full powers under Commerce Clause); H.R.Rep. No. 1107, 93d Cong., 2d Sess. 29–31 (1974) (explaining that purpose of amendment to 15 U.S.C. § 45 changing jurisdiction of Federal Trade Commission ("FTC") from activities "in commerce" to activities "in or affecting interstate commerce" is to expand FTC jurisdiction to maximum extent permitted by Commerce Clause), *reprinted in* 1974 U.S. Code Cong. & Ad.News 7702, 7712–13; H.R.Rep. No. 871, 96th Cong., 2d. Sess. 4–7 (1980) (explaining amendment to § 7 of the Clayton Act, 15 U.S.C. § 18, changing its coverage from business activities "engaged in" interstate commerce to those "affecting commerce," thereby expanding Clayton Act's coverage to maximum permitted under the Commerce Clause and overruling *United States v. American Building Maintenance Industries,* 422 U.S. 271, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975)), *reprinted in* 1980 U.S.Code Cong. & Ad.News 2732, 2735–37. *See also* 15 U.S.C. § 78l (g)(1) (1982) (securities regulation); 15 U.S.C. § 2006(c)(1) (1982) (automobile labelling); 17 U.S.C. § 910(a) (Supp. II 1984) (copyright enforcement); 42 U.S.C. §§ 6303(c), 6325(d) (1982) (energy conserva-

tion); 49 U.S.C.App. § 2503(3) (Supp. II 1984) (motor carrier safety).

Moreover, in the modern cases that rest upon an expansive view of Congress's constitutional Commerce Clause powers, the Supreme Court has made clear that the constitutionally necessary effect upon interstate commerce includes the *cumulative* impact of many instances of single events of the type that Congress sought to regulate. *See Heart of Atlanta Motel,* 379 U.S. at 254–59, 85 S.Ct. at 355–59, and cases cited therein. Against this background, one can read the language "possess in or affecting commerce, any firearm" as serving a jurisdictional purpose, making clear that Congress wished to exercise its Commerce Clause power broadly in order to achieve a crime-control objective, namely, stopping convicted felons from possessing guns. If so, the effect on commerce to which Congress refers could include the effect that permitting (or forbidding) a person or persons of this sort to possess interstate guns will have on interstate commerce, Congress's object being to show not necessarily an *injury* to commerce, but rather simply to show *some effect* for jurisdictional reasons. As so read, the word "affecting" would include past or present effects; it would include possession of a gun that *did* travel interstate before the felon possessed it. *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).

For another thing, the legislative history of the statute suggests that Congress intended this very result. The relevant House Judiciary Committee Report, for example, said that the effect of the new law is to prohibit persons:

from receiving, *possessing,* or transporting firearms in interstate or foreign commerce *or firearms which have been shipped or transported in interstate or foreign commerce* if they are or have been:

(1) under indictment for or convicted of a felony....

H.R.Rep. No. 495, 99th Cong., 2d Sess. 23 (1980) (emphasis added; footnote deleted), *reprinted in* 1986 U.S.Code Cong. & Ad.

News 1327, 1349. Moreover, Congress enacted this statute after the Supreme Court had held that these very words, "possess ... in commerce or affecting commerce ... any firearm" carry this interpretation. In *Scarborough,* 431 U.S. at 563, 97 S.Ct. at 1963, when interpreting a statutory predecessor of § 922(g), § 1202(a) of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title VII"), Pub.L. No. 90–351, Title VII, §§ 1201–03, 82 Stat. 197, 236, *repealed by* Firearm Owner's Protection Act, Pub.L. No. 99–308, § 104(b), 100 Stat. 449, 459 (1986), the Court reconsidered dicta that it had written in *United States v. Bass,* 404 U.S. 336, 350, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1972), that appeared to give the words a limited meaning. In *Bass,* 404 U.S. at 350, 92 S.Ct. at 524, the Court wrote:

[f]or example, a person "possesses ... in commerce or affecting commerce" if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce.

In *Scarborough,* the Court looked more closely at Title VII's legislative history, quoting, among other things, sponsoring Senator Long's remarks:

I have prepared an amendment ... simply setting forth the fact that anybody who has been convicted of a felony ... is not permitted to possess a firearm.

It places the burden and the punishment on the kind of people who have no business possessing firearms in the event they come into possession of them....

114 Cong.Rec. 13868–69 (1968), *quoted in Scarborough,* 431 U.S. at 572–73, 97 S.Ct. at 1967–68. The *Scarborough* court then rejected the defendant's contentions that Congress did not intend to punish possession of a firearm unless the gun had moved in interstate commerce at or near the time of possession. It held instead that a felon who possessed a gun violated the statute as long as the gun *previously* had travelled in interstate commerce. Such an interpretation "captures the essence of Congress' intent, striking at the possession of weapons by people 'who have no business pos-

sessing [them].' " *Scarborough,* 431 U.S. at 577, 97 S.Ct. at 1970 (citation omitted).

Of course, *Scarborough* considered Title VII, while the statute before us is a later statute. But it is a successor statute to Title VII. The House Judiciary Committee explicitly said that § 922(g), the section here at issue:

> combines in one section ... all of the offenses related to sale of firearms *to* unqualified persons and offenses of receipt, possession and transport of firearms *by* unqualified persons (or their employees) now divided between Title I of the Gun Control Act (18 U.S.C. 922(d), (g), and (h)) and Title VII of the Omnibus Crime Control and Safe Streets Act (19 U.S.C. 1202(a) and (b))....

H.R.Rep. No. 495 at 23 (emphasis in original), *reprinted in* 1986 U.S.Code Cong. & Ad.News at 1349. An examination of the predecessor statute shows that the "transport" and "receipt" language (not here at issue) likely came from Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title IV"), Pub.L. No. 90–351, Title IV, § 902, 82 Stat. 197, 228, *amended by* Gun Control Act of 1968, Pub.L. No. 90–618, Title I, § 102, 82 Stat. 1216, *amended by* Pub.L. No. 97–377, Title I, § 165(a), 96 Stat. 1923 (1982), *amended by* Firearm Owner's Protection Act, Pub.L. No. 99–408, § 2, 100 Stat. 920 (1986), while the "possession" language came from Title VII. We have no good reason to think that Congress, when picking up the language of Title VII, intended to reject *Scarborough* 's authoritative interpretation, particularly in light of the House Judiciary Report just quoted and the statute's use of the same language.

Appellant raises two countervailing considerations. He says that to interpret the word "affecting" as including a *past* affecting or a *cumulative* affecting is an awkward interpretation of the statute's language. We agree, but Congress's choice of language is understandable. A Congress that wanted to extend § 922(g)'s jurisdictional reach to include past, present, and (possibly) future connections with interstate commerce, expanding the crime to include more than just receipt or transport,

might have preferred to use a single, highly general word with a history, such as "affecting," rather than to write a far longer statute using several separate clauses in different tenses, a drafting approach that would have risked generating numerous new judicial interpretations of each additional word.

Appellant also points to the language in *Scarborough* characterizing Title VII as "not the product of model legislative deliberation or draftsmanship." 431 U.S. at 570, 97 S.Ct. at 1966 (citation omitted). He adds that the present act was carefully drafted, and that we therefore should not consider Congress to have adopted Title VII's earlier, "loose" interpretation. This argument, in our view, cannot overcome the other considerations we have discussed. We therefore hold that this statutory language applies to a possession of a gun that previously moved in interstate commerce.

■ 2. Appellant points out that his gun may have arrived in Massachusetts before May, 1986, when Congress enacted the present gun-control law. He argues that application of the law to him thereby violates the Fifth Amendment's *ex post facto* clause, a clause that forbids Congress to enact any law " 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then proscribed.' *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325–26 [18 L.Ed. 356] (1867)." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981), *quoted in United States v. Robinson,* 843 F.2d 1, 4 (1st Cir.1988).

The provision of the 1986 law here at issue, however, does not punish the act of transporting a gun in interstate commerce; the "in or affecting commerce" language, as we have just discussed, describes what *kind* of a gun felons may not possess, and it provides the jurisdictional basis for a federal law. The act that the law forbids is possession; and the defendant engaged in that act seven months after the law's enactment. *United States v. Hopkins,* 529 F.2d 775, 777 (8th Cir.1976) (act made crimi-

nal by Title VII is the possession of the firearm, "not interstate transportation of the weapon by someone else"), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977), *cited in Robinson*, 843 F.2d at 6; *see also United States v. D'Angelo*, 819 F.2d 1062, 1065–66 (11th Cir.1987) (also interpreting Title VII); *United States v. Woods*, 696 F.2d 566, 572 (8th Cir.1982) (same); *cf. United States v. Matassini*, 565 F.2d 1297, 1306–07 (5th Cir.1978) (prior felon provision of Title VII does not violate *ex post facto* clause); *United States v. Sutton*, 521 F.2d 1385, 1390–91 (7th Cir.1975) (same).

Appellant does not claim here that he was not given sufficient time to rid himself of a gun that the May 1986 laws made it unlawful for him to possess. Nor do we see here how he could make such an argument given the seven-month period between the statute's effective date and the date of his arrest, and the fact that his conduct—possessing the gun—was, in any event, unlawful long before 1986 (though under different federal statutes with somewhat different punishments).

■ 3. Appellant argues that the indictment is too vague, that it does not " 'sufficiently apprise [him] of what he must be prepared to meet.' *Russell v. United States*, 369 U.S. 749, 763 [82 S.Ct. 1038, 1047, 8 L.Ed.2d 240] (1962) (citations omitted)." *United States v. Santa–Manzano*, 842 F.2d 1, 2 (1st Cir.1988) (Constitution requires that "the indictment ... contain the elements of the offense charged" and "fairly inform a defendant of the charge against which he must defend."); *see also Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Serino*, 835 F.2d 924, 929 (1st Cir.1987). The indictment here reads as follows:

> On or about December 23, 1986, at or around Saugus, in the District of Massachusetts,
> JOHN J. GILLIES, JR.
> defendant herein, having previously been convicted of three or more violent felonies, as that term is defined in 18 United States Code Section 924(e)(2), did know-

ingly possess a firearm, that is: a Rossi .38 caliber revolver; with serial number D355921 which had previously travelled in interstate commerce. All in violation of Title 18, United States Code, Sections 922(g) and 924(e).

The indictment informs the defendant which statute he violated, § 922(g); it refers to the specific unlawful act (possession); it refers to the specific gun; it states explicitly the connection with interstate commerce that the government intends to prove; and it tells him which of several different categories of unlawful possessors he falls within, namely, the category of those previously convicted of a crime "punishable by imprisonment for a term exceeding one year." (The indictment refers to "violent felonies ... as defined in ... Section 924(e)(2)," which section defines "violent felonies" in terms of crimes "punishable by imprisonment for a term exceeding one year." *See* Appendix B.) The indictment also refers to *three* prior violent felony convictions, the predicate for applying the extra sentence mandated by § 924(e). We find the indictment clear enough, and we do not believe the Constitution requires more. *Cf. Hamling, supra; Santa–Manzano, supra; Serino, supra.*

■ 4. Appellant points out that the 1986 recodification of the federal gun control law separates an elaborate set of substantive crimes, placed in § 922, entitled "Unlawful acts," (Appendix A) from an elaborate set of penalties for committing those acts, placed in § 924, entitled "Penalties." (*See* Appendix B.) Section 924, in subsection (a)(1), provides a *maximum* penalty of five years imprisonment and a $5,000 fine for violating § 922(g)(1), but it goes on, in subsection (e)(1), to provide a fifteen-year *minimum* term of imprisonment if the defendant has committed *three* prior violent or drug-related felonies. Appellant argues that § 924(e) (*see* Appendix B) is a "sentencing enhancement" provision—that it does not create a substantive crime. He next says that, if he had insisted on his right to a jury trial, the government would have told the jury about his three prior felony convictions *unnecessar-*

*ily* (for they had to do only with the *sentence,* not with the *crime* ). *Cf. Government of Virgin Islands v. Castillo,* 550 F.2d 850 (3d Cir.1977) (handgun possession conviction reversed because indictment improperly mentions prior felony conviction relevant only for purposes of separate sentencing enhancement statute). And, he concludes, it was this fear of the government's unnecessarily prejudicing the jury that may have led him to waive his right to a jury trial.

We need not decide whether or not § 924(e) is a "sentencing enhancement" statute, for even if we assume appellant is right that references in the indictment to prior felonies should not have been placed before the jury, *see Castillo,* 550 F.2d at 850, *United States v. Foskey,* 636 F.2d 517 (D.C.Cir.1980), appellant waived a jury trial, and the fear of prejudice that he mentions could not have affected his waiver decision. The district court told the appellant that it would remove the references from the jury's copy of the indictment if the appellant wished. The appellant, aware of the choice, nonetheless decided to waive a jury trial, and to be tried by a judge, who, irrespective of the type of statute, would be aware of the convictions. Given the court's offer to protect the defendant from jury awareness of his prior record (except insofar as necessary to prove the elements of § 922(g)), we can find no error.

▇ 5. Appellant's last contention is that, at the sentencing hearing, the government failed to offer sufficient proof of three prior "violent felony" convictions. § 924(e)(2)(B). The government offered proof of several prior convictions, including two for burglary of the same home on successive nights (appellant received concurrent sentences), and two for armed robberies of two different drug stores committed on consecutive days (appellant also received concurrent sentences). He argues, however, that each *pair* of convictions should count as only *one* for the purposes of § 924(e), because "the statute was intended to reach multiple criminal episodes that were distinct in time, not multiple felo-

ny convictions arising out of a single criminal episode." *United States v. Petty,* 828 F.2d 2, 3 (8th Cir.1987), *petition for cert. filed,* Apr. 5, 1988. The drug store robberies, however, occurred on different days and at different drug stores. Both robberies are distinct from the burglaries, which occurred three years previously. As a result, even if, as appellant suggests, the two burglary convictions stemmed from one "episode" which stretched over New Year's Eve, 1972, the government still proved three "violent felony" convictions as required by § 924(e). *Accord United States v. Wicks,* 833 F.2d 192 (9th Cir.1987) (two burglary convictions based on burglaries committed in different times in different places qualify as separate "violent felonies" even though both occurred on same night and defendant received a concurrent sentence), *petition for cert. filed,* Apr. 16, 1988; *United States v. Greene,* 810 F.2d 999, 1000 (11th Cir.1986) (single indictment alleging burglaries of four separate buildings at four separate locations on four different days provides evidence of four separate "violent felonies" for purposes of sentencing enhancement).

For these reasons, the judgment of the district court is

*Affirmed.*

### APPENDIX A

§ 922. Unlawful acts

(g) It shall be unlawful for any person—

(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3)[1] is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

(5) who, being an alien, is illegally or unlawfully in the United States;

(6) who has been discharged from the Armed Forces under dishonorable conditions; or

(7) who, having been a citizen of the United States, has renounced his citizenship;

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

## APPENDIX B

§ 924.  Penalties

(a)(1) Except as otherwise provided in paragraph (2) of this subsection, subsection (b) or (c) of this section, or in section 929, whoever—

(A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;

(B) knowingly violates subsection (a)(4), (a)(6), (f), (g), (i), (j), or (k) of section 922;

(C) knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922($l$);  or

(D) willfully violates any other provision of this chapter,

shall be fined not more than $5,000, imprisoned not more than five years, or both, and shall become eligible for parole as the Parole Commission shall determine.

(2) Any licensed dealer, licensed importer, licensed manufacturer, or licensed collector who knowingly—

(A) makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or

(B) violates subsection (m) of section 922,

shall be fined not more than $1,000, imprisoned not more than one year, or both, and shall become eligible for parole as the Parole Commission shall determine.

(e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

(2) As used in this subsection—

(A) the term "serious drug offense" means—

(i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the first section or section 3 of Public Law 96–350 (21 U.S.C. 955a et seq.), for which a maximum term of imprisonment of ten years or more is prescribed by law;  or

(ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;  and

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another;  or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.