**UNITED STATES of America,
Plaintiff,**

v.

**Yamil H. KOURI–PEREZ (01),
et al., Defendants.**

**No. Crim. 97–091 (JAF).**

United States District Court,
D. Puerto Rico.

March 2, 1999.

(emphasis added).

Maria A. Dominguez–Victoriano, Asst. U.S. Attorney, Guillermo Gil, U.S. Attorney, San Juan, PR, for U.S.

Benny Frankie Cerezo, San Juan, PR, for Kouri–Perez.

Francisco Rebollo–Casalduc, San Juan, PR, for Sotomayor–Vazquez.

Yolanda Collazo, San Juan, PR, for Borel–Barreiro.

## MEMORANDUM ORDER

FUSTE, District Judge.

This order expands upon our Order No. 52, of February 26, 1999, partially granting Defendants' motion for continuance dated February 24, 1999. We scheduled trial to commence on March 1, 1999 and, thereafter, we found it proper to delay the commencement of trial until March 11, 1999. *See Docket Documents Nos. 531, 601, 622–24, and 627.*

## I.

### Relevant Procedural History

On May 5, 1997, a federal grand jury indicted Defendants for their alleged involvement in a conspiracy involving a money laundering and corrupt solicitation scheme. The alleged conspiracy involved the Advanced Community Health Services, Inc. ("ACHS") and improper use of federal funding appropriated for the treatment of AIDS victims. 18 U.S.C. §§ 371, 666, 1512(b), 1956(a)(1)(B)(i) –(ii), and 982. *Docket Document No. 2.* On February 11, 1998, the grand jury returned a second superseding indictment. *Docket Document No. 229.* We originally set trial to commence on March 1, 1999. On February 19, 1999, a federal grand jury returned a third superseding indictment, which added two new Defendants and expanded the length of the alleged conspiracy. *Docket Document No. 582.* We subsequently severed the two newly-added defendants. On February 24, 1999, Defendants moved to continue the trial. *Docket Document No. 601.* On February 26, 1999, we held a status conference on the record to discuss this motion. On that same day, we issued Order No. 52, ordering that the case be tried on the second superseding indictment, and granting Defendants' motion for continuance, but limiting it to ten days. We also severed Defendant Milagros Gar-

cía–León. This memorandum order expands upon Order No. 52.

## II.

### *The Superseding Indictments*

The government obtained the third superseding indictment on February 19, 1999, ten days before trial was slated to begin. The apparent reason behind the timing of the recently-filed third superseding indictment is that witnesses subpoenaed by the grand jury contested their appearance. This required lengthy proceedings and an appeal. Upon the First Circuit's affirmance of our order compelling attendance and denying the stay of mandate, we entered orders which eventually, upon the admonishment of severe sanctions, forced the non-complying parties to appear before the grand jury on February 12, 1999. This attenuated process concluded on February 19, 1999, with the return of the third superseding indictment. *See Docket Documents Nos. 506, 508–09, 512, 514–18, 566a–c, and 618.* Thus, the government, through no apparent fault of its own, was unable to obtain the third superseding indictment at an earlier date.

Just two days before the filing of the third superseding indictment, the government amended its Fed.R.Crim.P. 12(d)(2) designation of evidence. *See Docket Document No. 569.* The government turned over additional discovery to Defendants. During the February 26 status conference, the parties discussed the additional documentation as the court probed how these documents are relevant to the second or the third superseding indictment.[1] Additionally, the third superseding indictment expanded the dates of the conspiracy by almost twenty-one months at the inception.[2]

We have carefully considered Defendants' motion and recognize their concerns regarding the third superseding indictment. However, we are also cognizant of the prosecution's position of being unable, through no apparent fault of their own, to obtain the third superseding indictment prior to February 19, 1999. Thus, in the interest of fairness to all parties, we consider the appropriate inquiry to be whether we should try this case on the second or the third superseding indictment.[3]

District courts have discretion to grant continuances upon a determination that the "ends of justice" necessitate such action. 18 U.S.C. § 3161(h)(8)(A). Prosecutors are free to file superseding indictments "at any time prior to a trial on the merits." *United States v. Del Vecchio,* 707 F.2d 1214, 1216 (11th Cir.1983) (citing *United States v. Stricklin,* 591 F.2d 1112, 1115 n. 1 (5th Cir.1979)). Nonetheless, the prosecution's filing of a superseding indictment does not "automatically" entitle a defendant to a continuance. *United States*

---

1. The additional materials are as follows:
 1. twelve (12) checks to Harvard University personnel;
 2. twenty-four (24) checks and vouchers representing payments to the Garib's housekeeper;
 3. twenty-three (23) checks from ACHS to Dr. Bello;
 4. seven years of checks, vouchers and invoices to the Dubón and Dubón law firm;
 5. statements and documentation for a Fleet bank account used by the wife of Defendant Yamil H. Kourí;
 6. seven (7) checks and vouchers from ACHS to EMA Productions;
 7. five (5) separate Articles of Incorporation for corporations with which Defendant Yamil H. Kourí was involved; and
 8. two (2) corporate business checks issued by ACHS.

2. The original dates the government alleged were from October 10, 1990 to in or about February 1994. The new dates span the period from January 12, 1989 to in or about February 1994.

3. We note that an indefinite continuance is not an option in this protracted criminal case. As "[s]ociety cannot be placed in a position where it is unable to bring to trial the violators of its laws," *United States v. Moreno Morales,* 815 F.2d 725, 739 (1st Cir.1987), we find that an indefinite continuance is simply not available in this case.

*v. Vaughn,* 111 F.3d 610 (8th Cir.1997); *see also United States v. Rojas–Contreras,* 474 U.S. 231, 234, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985) (minor correction of indictment before trial did not require court to grant a continuance); *United States v. Simpson,* 979 F.2d 1282 (8th Cir. 1992) (new charge added to indictment before trial did not require court to grant a continuance); *cf Del Vecchio,* 707 F.2d at 1216 (stating that prior to trial, district court has discretion to decide which indictment to dismiss); *accord United States v. Lindsey,* 47 F.3d 440, 444 (D.C.Cir.1995).

▆▆▆ As it is within our province to decide which indictment to proceed upon, we find that fairness and integrity compel us to proceed upon the second superseding indictment. *See United States v. Bowen,* 946 F.2d 734, 736 (10th Cir.1991) (stating that court found "no authority which supports the proposition that a superseding indictment zaps an earlier indictment to the end that the earlier indictment somehow vanishes into thin air"). Allowing prosecution pursuant to the third superseding indictment could subject Defendants to prejudice, mainly by implicating two additional defendants and twenty-one months of life to the conspiracy at its inception. *Cf United States v. Torres–Rodriguez,* 930 F.2d 1375, 1384 (9th Cir. 1991) (holding that prejudice is "determinative factor in deciding which counts of a multi-count indictment must be retried"). Both parties have been preparing for trial on the second superseding indictment for over a year, since February 11, 1998. Both sides have conducted vast amounts of research and invested substantial time preparing for a trial on the second indictment. Therefore, we hold that the parties will proceed to trial on the second superseding indictment. The third superseding indictment will govern the next trial involving the severed codefendants.

## III.

### Scope of the Indictment

Given the discussions at the February 26 status conference, and considering our decision to proceed under the second superseding indictment, we explore the contours and limits of that indictment. The two most significant changes in the third superseding indictment were the addition of two new Defendants, Luis E. Dubón–Otero, Jr. and Jorge Garib–Bazaín, and the expansion of the dates of the conspiracy by approximately twenty-one months at the inception of the conspiracy. The main substantive counts did not change, except that codefendant Kourí–Pérez was added as a codefendant in two substantive counts. However, our decision to proceed upon the second superseding indictment means that the new Defendants are not a part of this stage of the lawsuit and the dates of the alleged conspiracy have not been expanded. Thus, Defendants are dealing with substantially the same case as they were prior to the third superseding indictment.

▆▆▆ This is not to suggest that we are incognizant of the fact that some of the newly-designated documents may be relevant to the second superseding indictment. Defense counsel are absolutely correct in asserting that there is new evidence to be addressed. Nonetheless, the scope of the second superseding indictment is sufficiently expansive to cover some of that evidence. *See Glasser v. United States,* 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680 (1942) (stating that "[t]he particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object of a conspiracy for which petitioners contend is not essential to an indictment"); *but see United States v. Santa–Manzano,* 842 F.2d 1, 3 (1st Cir.1988) (holding that indictment that did not state "with reasonable specificity the facts making up the essential elements of the crime" was constitutionally defective).

For example, regarding the conspiracy charge pursuant to 18 U.S.C. § 371, the second superseding indictment states that the object of the conspiracy was for Defendants, "together with *others known and*

*unknown* to the Grand Jury, to use the funds of ACHS and ISSJ (San Juan AIDS Institute), *for unauthorized personal and other benefits,* through a pattern of deceptive conduct and transactions ... [that were] nothing more than a means of concealing *the fraudulent nature of the disbursements."* Docket Document No. 229, ¶ *34* (emphasis added). Paragraph 43 states that "ACHS checks payable to these corporate entities and organizations would be converted into manager's checks in order to facilitate the negotiability of said checks and *their transfer to their ultimate [illegal] destination." Id.,* ¶ *43* (emphasis added). Paragraph 46 states that "[f]unds from ACHS would be used for unauthorized personal benefit, *including the attempted financing of a political campaign." Id.,* ¶ *46* (emphasis added). We find these charges to be sufficiently comprehensive to possibly include some of the government's new evidence that is relevant to the second superseding indictment. Additionally, defense counsel need only research and address the new material encompassed within the original dates of the conspiracy alleged in the second superseding indictment, October 10, 1990, through in or about February 1994. All other material, including the expansion of the conspiracy, is extraneous.

## IV.

### The Ten–Day Extension

At the February 26 status conference, defense counsel voiced many concerns regarding the amount of new information the government produced contemporaneous with the third superseding indictment and the time necessary to cull, manage, and research the new indictment. Recognizing defense counsel's legitimate concerns, we granted Defendants a ten-day continuance of trial. As stated in the foregoing, both sides have been preparing for trial on the second superseding indictment for more than a year and the amount of new information is significantly reduced by our decision to proceed upon the second superseding indictment. Therefore, we find that ten days is an adequate period of time for defense counsel to manage and research the new information and documentation encompassed by the second superseding indictment.

## V.

### Brady Grand Jury Materials

On February 24, 1999, the government disclosed to the defense Jencks Act documents and materials, including grand jury testimony. This production was in accordance with our order directing the early production of these documents. According to defendants, this production contains some exculpatory evidence. Apparently, some of the grand jury witnesses contradicted each other. Defendants claim that if the contradictory statements are arguably *Brady* material, the government had the obligation to disclose them immediately upon becoming aware of their existence, rather than at this late date. At the February 26 status conference, defense counsel intimated that the government illegally withheld this exculpatory grand jury testimony, in violation of *Brady.* Thus, we address the issue of whether the government violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In *Brady,* the Supreme Court held that suppression by the prosecution of evidence favorable to a defendant who has requested it violates due process, where such evidence is material to either guilt or punishment. The rule embraces exculpatory statements before a grand jury. *See United States v. Campagnuolo,* 592 F.2d 852, 858 (5th Cir.1979). *Brady* imposes an affirmative duty on the prosecution to produce timely-requested evidence that is materially-favorable to the accused, as direct or impeaching evidence. *Brady* is a rule of fairness and of prosecutorial obligation. Evidence that may be used to substantially impeach the credibility of a government witness must also be disclosed to the de-

fense. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

"In *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes ... [and] held that regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375 (opinion of Blackmun, J.)); *Id.,* at 685, 105 S.Ct. 3375, (White, J., concurring in part and concurring in judgment). Not every instance in which the government declines to reveal evidence that is arguably helpful to the defense constitutes a constitutional violation. *Kyles,* 514 U.S. at 436, 115 S.Ct. 1555. Rather, the relevant inquiry is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles,* 514 U.S. at 434, 115 S.Ct. 1555. On the other hand, the Jencks Act,[4] 18 U.S.C. § 3500, prohibits federal courts from compelling the early disclosure by the government of statements made by its witnesses. *United States v. Algie,* 667 F.2d 569, 571–72 (6th Cir.1982). The early disclosure of Jencks material is within the sole discretion of the government. *Id.* at 571–72. When a court orders the government, without objection, to make an early production, Jencks materials must be produced by the stipulated date. However, in the absence of a court order to the contrary, under the Jencks Act, statements made by government witnesses may be withheld until after they have testified on direct examination. 18 U.S.C. § 3500(b).

The intersection of *Brady* and the Jencks Act creates an interesting problem regarding the timing of disclosure. When information arguably falls into both categories, Jencks and *Brady,* courts need to decide which controls with respect to the timing of disclosure. This is an issue that has caused a good deal of tension, resulting in a split among the federal circuits. *United States v. Beckford,* 962 F.Supp. 780, 789 (E.D.Va.1997) (citing *United States v. Shifflett,* 798 F.Supp. 354 (W.D.Va.1992)). The majority of the circuits have held that evidence that is within both *Brady* and the Jencks Act is controlled by the timing of disclosure requirements of the Jencks Act. *See United States v. Kaplan,* 554 F.2d 577 (3rd Cir.1977); *United States v. Scott,* 524 F.2d 465, 467–68 (5th Cir.1975) (stating that "*Brady* is

---

**4.** The Jencks Act provides, in relevant part:

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

. . . . .

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

. . . . .

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500.

not a pretrial remedy and was not intended to override the mandate of the Jencks Act"); *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir.1988); *United States v. Jones*, 612 F.2d 453, 455 (9th Cir.1979) (holding that "Brady does not overcome the strictures of the Jencks Act"); *United States v. Pollack*, 534 F.2d 964, 973 (D.C.Cir.1976) (holding that evidence that is both *Brady* and Jencks material may be withheld until after the witness has taken the stand).

On the other hand, at least two circuits have "held that the constitutional dictates of *Brady*, not the Jencks Act, govern the disclosure of evidence which is both *Brady* and Jencks material." *United States v. Beckford*, 962 F.Supp. at 791 (citing *United States v. Tarantino*, 846 F.2d 1384, 1414–15 n. 11 (D.C.Cir.1988)) (holding that, under the facts of that case, Jencks Act timing of disclosure limitations do not lessen the government's obligations to disclose exculpatory material under *Brady* ) *see also United States v. Starusko*, 729 F.2d 256, 263 (3rd Cir.1984).

Finally, some courts have adopted a balancing approach to resolve conflicts between evidence that is covered by both *Brady* and the Jencks Act. As the District of Columbia Circuit articulated:

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure. The trial judge must be given a wide measure of discretion to ensure satisfaction of this standard. While some courts have held that *Brady* affords no pre-trial discovery rights to defendants, we believe that application of a strict rule in this area would inevitably produce some situations in which late disclosure would emasculate the effects of *Brady* or other situations in which premature disclosure would un-

necessarily encourage those dangers that militate against extensive discovery in criminal cases, e.g., potential for manufacture of defense evidence or bribing of witnesses. Courts can do little more in determining the proper timing for disclosure than balance in each case the potential dangers of early discovery against the need that Brady purports to serve of avoiding wrongful convictions.

*Pollack*, 534 F.2d at 973–74 (internal citations omitted).[5]

 The First Circuit has not yet squarely addressed this issue. Nonetheless, it is abundantly clear that district judges may not compel pretrial disclosure of non-exculpatory Jencks materials prior to the conclusion of a witness' direct testimony. *See United States v. Neal*, 36 F.3d 1190, 1197 (1st Cir.1994); *United States v. Grandmont*, 680 F.2d 867, 874 (1st Cir. 1982); *see also United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir.1988); *United States v. Molt*, 772 F.2d 366, 370 (7th Cir.1985); *United States v. Percevault*, 490 F.2d 126, 129, 131 (2nd Cir.1974). The determinative factor seems to be whether the defendant is prejudiced by following the statutory dictates of the Jencks Act, rather than *Brady*. *See, e.g., United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Harris*, 458 F.2d 670 (5th Cir.1972); *United States v. Behrens*, 689 F.2d 154, 158 (10th Cir.1982) (citing *United States v. Jackson*, 579 F.2d 553, 560 (10th Cir. 1978)). Defendants here are alleging that the government failed to provide them with exculpatory grand jury testimony immediately, thus violating *Brady*. However, in the present case, the time period for discovery has concluded. Both the government and defense counsel are in the final stages of preparation for trial. This is not a case of evidence entirely withheld, as the government did turn over the evidence which Defendants allege was unconstitutionally withheld well before trial.

---

5. Courts employing a balancing test do not consistently hold that *Brady* trumps the Jencks Act or vice-versa. Rather, they make the determination on a case-by-case basis.

Thus, we find, based upon the argument at the February 26 status conference, that Defendants have not shown that they suffered prejudice as a result of the government's disclosure of Jencks material with possible Brady implications at this time. We granted Defendants ten additional days to prepare for trial, and we feel that this is adequate time for defense counsel conscientiously to address the new evidence revealed. Therefore, irrespective of whether the timing limitations of *Brady* or the Jencks Act govern the exculpatory evidence revealed in this case, we find that Defendants have not proven prejudice by the government's disclosure of such evidence some twenty-two days before trial.

**IT IS SO ORDERED.**