Reversed by published opinion. Judge WYNN wrote the majority opinion, in which Judge FLOYD joined. Judge AGEE wrote a dissenting opinion.
OPINION
WYNN, Circuit Judge:
It is axiomatic that, “to be constitutionally valid, a plea of guilty must be knowingly and voluntarily made.” United States v. Brown, 117 F.3d 471, 473 (11th Cir.1997). And “a guilty plea is not knowingly and voluntarily made when the defendant has been misinformed” as to a crucial aspect of his case. Id.
In this extraordinary case, the law enforcement officer responsible for the investigation that led to the defendant’s arrest and guilty plea himself later pled guilty to having defrauded the justice system in connection with his duties as an officer. Regarding this case specifically, the officer admitted to having lied in his sworn affidavit that underpinned the search warrant for the defendant’s residence and vehicle, where evidence forming the basis of the charge to which the defendant pled guilty was found. We hold that the officer’s affirmative misrepresentation, which informed the defendant’s decision to plead guilty and tinged the entire proceeding, rendered the defendant’s plea involuntary and violated his due process rights. Accordingly, we reverse the district court’s decision holding otherwise and remand for further proceedings.
I.
A.
On October 29, 2007, Mark Lunsford, a Baltimore City Drug Enforcement Agency (“DEA”) Task Force Officer, applied for a search warrant for Defendant Cortez Fisher’s residence and vehicle. In his sworn affidavit — the sole affidavit supporting the application for the search warrant — Luns-ford averred that he targeted Defendant after a confidential informant told him that Defendant distributed narcotics from his residence and vehicle and had a handgun in his residence. Lunsford described the confidential informant as a “reliable” informant who had previously provided him with information that led to numerous arrests for narcotics violations. J.A. 46, 149. Lunsford further averred that the confidential informant provided him with a physical description of Defendant, Defen *463 dant’s residential address, the make and model of Defendant’s vehicle, and his license plate number. Based on the information provided by the confidential informant, Lunsford obtained a photograph of Defendant. Lunsford showed the photograph to the confidential informant, who then confirmed Defendant’s identity. Lunsford declared that he subsequently conducted surveillance and saw Defendant make narcotics transactions from his car, after which Defendant returned to his residence.
On the morning of October 29, 2007, Lunsford and other officers saw Defendant leave his residence and stopped him for questioning. According to Lunsford, Defendant declined questioning and backed into a police vehicle. Officers then arrested and searched Defendant and found fifty empty glass vials in his pants pocket.
Solely on the basis of his sworn affidavit, Lunsford obtained a search warrant for Defendant’s residence and vehicle on October 29, 2007 and executed the warrant that same day. During the search, officers found crack cocaine and a loaded handgun.
Defendant was charged with one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841 and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Defendant entered into a plea agreement which, among other things, required him to plead guilty to possession of a firearm by a felon. Defendant was sentenced to ten years in prison.
B.
Over a year after Defendant pled guilty, in September 2009, Lunsford was charged with various fraud and theft offenses related to his duties as a DEA officer, including falsely attributing information to a confidential informant with whom he was splitting reward money. On March 15, 2010, Lunsford pled guilty to several such offenses. As part of his plea agreement, Lunsford admitted to falsely identifying a confidential informant on an affidavit supporting a wiretap application, an affidavit supporting a criminal complaint, and numerous investigation reports. Regarding Defendant’s case, Lunsford admitted to the Federal Bureau of Investigation that the confidential informant he identified in his affidavit “had no connection to the case” and that another individual was “the real informant[.]” J.A. 65.
Shortly after Lunsford’s guilty plea, Defendant filed a pro se motion seeking to have his guilty plea vacated based upon Lunsford’s criminal misconduct. On motion of the Federal Public Defender’s Office, the district court appointed counsel to represent Defendant. The district court denied Defendant’s motion to vacate on July 28, 2010. Defense counsel subsequently filed a motion to alter or amend the judgment, requesting that the district court reconsider its order and reopen the proceeding with the assistance of counsel. Defense counsel also filed a supplement to Defendant’s pro se motion to vacate. On May 31, 2011, the district court filed a Memorandum and an Order denying Defendant’s motion to vacate, stating:
Unquestionably, if [Defendant] had known of Lunsford’s criminal misconduct, he would have filed a motion to suppress, and the motion majr well have been successful. Nevertheless, [Defendant] does not deny that he was unlawfully in possession of a firearm (as he admitted under oath during his Rule 11 colloquy). Under these circumstances[,] I cannot find that a failure to allow [Defendant] to withdraw his guilty plea would result in a “miscarriage of justice.” Certainly, [Defendant] was denied of an opportunity to pursue a motion to suppress that might have been meritorious, but neither the Government nor his own counsel was aware of Luns- *464 ford’s criminal misconduct at the time that [Defendant] entered his guilty plea and was sentenced. Therefore, it cannot be said that .[Defendant’s] counsel was ineffective or that the Government breached any obligation that it owed to him....
J.A. 136 (internal citation omitted).
Nevertheless, the district court granted Defendant’s motion for a certificate of ap-pealability as to his Sixth Amendment ineffective assistance of counsel claim. Thereafter, this Court granted Defendant’s motion to expand the certificate of appealability to include the issue of whether the belated disclosure of Lunsford’s misconduct rendered Defendant’s plea invalid under the Due Process Clause.
II.
A.
After the imposition of a sentence, a guilty plea may be set aside pursuant to 28 U.S.C. § 2255. United States v. Davis, 954 F.2d 182, 184 (4th Cir.1992). In reviewing a ruling on a motion to vacate a plea under Section 2255, we review a district court’s legal conclusions de novo and its findings of fact for clear error. United States v. Roane, 378 F.3d 382, 395 (4th Cir.2004).
B.
1.
Defendant first contends that the district court erred by concluding that his guilty plea was knowing, intelligent, and voluntary because he did not know at the time he entered his plea that Lunsford lied in his search warrant affidavit. Defendant essentially argues that his plea is constitutionally infirm for two distinct reasons: (1) Lunsford’s underlying pre-plea misconduct rendered his plea involuntary under Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); and (2) the government failed to meet its evidentiary disclosure obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[1] We turn first to Defendant’s Brady v. United States argument.
“[A] guilty plea is a grave and solemn act to be accepted only with care and discernment[.]” Brady v. United States, 397 U.S. at 748, 90 S.Ct. 1463. When a defendant pleads guilty, he forgoes not only a fair trial, but also other accompanying constitutional guarantees. United States v. Ruiz, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). Thus, a guilty plea “not only must be voluntary but must be [a] knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences.” Brady v. United States, 397 U.S. at 748, 90 S.Ct. 1463.
 “The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.” Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (citations and quotation marks omitted). The Supreme Court has outlined the following standard as to the voluntariness of guilty pleas:
A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor’s business (e.g. bribes).
*465 Brady v. United States, 397 U.S. at 755, 90 S.Ct. 1468 (quotation and quotation marks omitted). Accordingly, to set aside a plea as involuntary, a defendant who was fully aware of the direct consequences of the plea must show that (1) “some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea” and (2) “the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.” Ferrara v. United States, 456 F.3d 278, 290 (1st Cir.2006) (emphasis added) (citations omitted); see also Brady v. United States, 397 U.S. at 755, 90 S.Ct. 1463.
Citing Brady v. United States and Ferrara, Defendant contends that the officer’s deliberate misrepresentation underpins the entire case against him and induced his guilty plea, thereby rendering his plea involuntary. We agree.
2.
To set aside his plea as involuntary, Defendant first must show that impermissible government conduct occurred. Brady v. United States, 397 U.S. at 757, 90 S.Ct. 1463; Ferrara, 456 F.3d at 290. The Supreme Court has held that government misrepresentations constitute impermissible conduct. Brady v. United States, 397 U.S. at 755, 90 S.Ct. 1463. As the dissent points out, Brady v. United States did not specifically define government misrepresentations. Nonetheless, the Brady v. United States opinion provides selected examples, including that prosecutors may not make “unfulfilled or unfulfillable promises” to induce guilty pleas. Id.; see also Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); United States v. Ayala, 601 F.3d 256, 270 (4th Cir.2010); Correale v. United States, 479 F.2d 944, 947 (1st Cir.1973). Accordingly, this Court allowed a defendant to withdraw his guilty plea as involuntary because the prosecutor misrepresented the sentence he would receive, telling the defendant that he would not be sentenced to prison. United States v. Hammerman, 528 F.2d 326, 331-32 (4th Cir.1975).
But Brady v. United States does not limit government misrepresentations to prosecutorial promises designed to elicit a guilty plea. Consequently, the First Circuit has held that the government may not make “plain[ ]” and “inexcusable]” misrepresentations not anchored to any permissible litigation strategy. Ferrara, 456 F.3d at 293. In Ferrara, for example, the government explicitly represented that the prosecution would satisfy its continuing duty to disclose all exculpatory evidence in a timely manner. Id. Not only did the government fail to disclose as promised, it explicitly misrepresented that it had either disclosed to the defendants all exculpatory information or notified them of the exculpatory evidence it refused to disclose. Id. The First Circuit held that the affirmative misstatements “plainly and inexcusably misrepresented the true state of affairs” and constituted “blatant misconduct” that was “sufficient to ground the petitioner’s claim that his guilty plea was involuntary.” [2] Id. (citation omitted).
*466 Even defense counsel misrepresentations can undermine the validity of a plea. Tollett v. Henderson, 411 U.S. 258, 266-67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). For example, in Strader v. Garrison, 611 F.2d 61 (4th Cir.1979), this Court concluded that although a defendant need not be informed about his parole eligibility date prior to entering a guilty plea, “when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel. When the erroneous advice induces the plea, permitting him to start over again is the imperative remedy for the constitutional deprivation.” Id. at 65.
This case presents highly uncommon circumstances in which gross police misconduct goes to the heart of the prosecution’s case. Lunsford falsely testified in his sworn search warrant affidavit that he targeted Defendant after a reliable confidential informant told him that Defendant distributed narcotics from his residence and vehicle and had a handgun in his residence. Lunsford identified the confidential informant in his affidavit, and he averred that the informant identified Defendant in a photograph and provided Lunsford with Defendant’s physical description, address, and vehicle information. On the basis of that affidavit, Lunsford secured a search warrant. That warrant enabled the search of Defendant’s home, where evidence forming the basis of the charge to which he pled guilty was found. After Defendant was charged, the prosecution provided Lunsford’s affidavit to Defendant, who relied on it in deciding whether to plead guilty. Over a year after Defendant pled guilty, Lunsford himself pled guilty to fraud and theft offenses and admitted that the confidential informant he identified in his affidavit “had no connection to the case.” J.A. 65.
“Often the decision to plead guilty is heavily influenced by the defendant’s appraisal of the prosecution’s case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted.” Brady v. United States, 397 U.S. at 756, 90 S.Ct. 1463. Nevertheless, the Constitution “permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.” Ruiz, 536 U.S. at 630, 122 S.Ct. 2450 (citations omitted).
This, however, is not a case where Defendant sought to withdraw his plea “merely because he discover[ed] long after the plea ha[d] been accepted that his calculus misapprehended the quality of the State’s case or the likely penalties attached to alternative courses of action.” Brady v. United States, 397 U.S. at 757, 90 S.Ct. 1463. Rather, Defendant’s misapprehension stems from an affirmative government misrepresentation that “strikes at the integrity of the prosecution as a whole.” Reply Br. at 4; see Ferrara, 456 F.3d at 291 (stating that it is only when a defendant’s misapprehension of the strength of the government’s case “results from some particularly pernicious form of impermissible conduct that due process concerns are implicated” (citations omitted)). Indeed, the lawyer who represented Defendant in the underlying criminal proceedings declared under oath that “an examination of the warrant — including the legality of its issuance and its service — was a critical part of my evaluation of the government’s case.” J.A. 121. Because the lawyer thought that there were no grounds on which to challenge the warrant, she believed the government’s case to be “a strong one” and advised Defendant to enter a plea. J.A. 121.
Even the government and the district court acknowledged the importance of Lunsford’s misrepresentation. On appeal, *467 the government notes that had it “learned of Lunsford’s misconduct prior to [Defendant’s] guilty plea, it would have disclosed that information to the defense.” Appellant Br. at 14 n. 2. And in refusing to set aside Defendant’s guilty plea, the district court recognized the importance of the information by stating that, “[u]unquestionably, if [Defendant] had known of Lunsford’s criminal misconduct, he would have filed a motion to suppress, and the motion may well have been successful.” J.A. 136. Without the suppressed evidence, there likely would have been no prosecution at all.
The government and the dissent point out that neither the prosecution nor defense counsel knew about Lunsford’s lies at the time Defendant entered his plea. Neither the timing, nor the prosecution’s good faith, however, negates the undisputed fact that the evidence the prosecution presented to Defendant and his counsel during deliberations as to whether Defendant should plead guilty was obtained under a search warrant issued solely on the basis of an untruthful law enforcement affidavit. Cf. Hammerman, 528 F.2d at 331 (noting that it does not matter that the prosecutor’s “prediction or promise was made in good faith; what matters is it was probably relied upon” by the defendant in deciding to plead guilty (citations omitted)); Correale, 479 F.2d at 947 (stating that prosecutorial misrepresentations, though made in good faith, are not acceptable).
The government and the dissent further observe that Defendant has never claimed actual innocence. Yet neither cites, nor did we find, a ease holding that a defendant’s factual innocence is a prerequisite to finding a plea invalid. Instead, in assessing the validity of a defendant’s plea, courts look to “all of the relevant circumstances surrounding” the plea. Brady v. United States, 397 U.S. at 749, 90 S.Ct. 1463. Thus, while a claim of innocence is perhaps an important factor in this assessment, it is by no means a dispositive one. See e.g., Matthew v. Johnson, 201 F.3d 353, 365 (5th Cir.2000) (courts assessing the validity of a defendant’s plea “may consider such factors as whether there is evidence of factual guilt”); United States v. Garcia, 401 F.3d 1008, 1013 (9th Cir.2005) (noting that while courts can consider a defendant’s claim of innocence in support of a motion to withdraw a plea, a defendant may have valid reasons for withdrawing a plea “that have nothing to do with innocence”).
In sum, Defendant has successfully shown that impermissible government conduct — an officer’s deliberate lie that led to the warrant that led to the discovery of the evidence against him — occurred.
3.
To have his plea vacated, in addition to showing impermissible government conduct, Defendant must show that the misconduct induced him to plead guilty. Brady v. United States, 397 U.S. at 755, 90 S.Ct. 1463. In other words, Defendant must show “a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial.” Ferrara, 456 F.3d at 294 (citation omitted). Courts take an objective approach to determining reasonable probability. Id. Thus, Defendant must show that a reasonable defendant standing in his shoes likely would have altered his decision to plead guilty, had he known about Lunsford’s misconduct. See id.
Here, Defendant argues that his “entire approach to the case would have been different,” had he known about Luns-ford’s affirmative misrepresentation and felonious behavior. Appellant Br. at 17. In support of Defendant’s argument, the *468 lawyer who represented him in the underlying criminal proceedings declared under oath that
[h]aving fully reviewed [Defendant’s] file and the information that I now know about Mark Lunsford, I can state with full confidence that my approach to [Defendant’s] case in 2007 and 2008 would have been entirely different had I known then what I know now. I would have advocated strongly for a different outcome for the case. The options I would have sought in good faith range from an outright dismissal, to a dismissal in lieu of state prosecution, to a plea in federal court to a significantly lower sentence. Were negotiations with [the prosecution] not successful, I would have sought to suppress the evidence against [Defendant], including filing a motion to suppress and seeking a Franks hearing. Were we to lose at such a hearing, I would have advised [Defendant] that a key consideration in deciding whether to enter a guilty plea or proceed to trial was the role that Officer Lunsford’s credibility would play at trial. I believe ... that I very likely would have obtained a better result than the 10 year sentence I advised [Defendant] to accept in 2008.
J.A. 122. Even the district court agreed with Defendant, stating that, “[u^questionably, if [Defendant] had known of Lunsford’s criminal misconduct, he would have filed a motion to suppress, and the motion may well have been successful.” J.A. 136 (emphasis added).
The dissent points out that Defendant may not have prevailed in challenging the validity of the search warrant. Yet the relevant inquiry is not whether Defendant undoubtedly would have prevailed in challenging the search warrant and its fruits, but whether there is a “reasonable probability” that he would not have plead guilty, had he known of the impermissible government conduct. Ferrara, 456 F.3d at 294. This, Defendant has shown.
Moreover, we cannot agree with the dissent’s analysis of the search warrant under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In Franks, the Supreme Court held that a defendant challenging the validity of a search warrant is entitled to a hearing if he preliminarily shows that: (1) the warrant affidavit contained a “deliberate falsehood” or statement made with “reckless disregard for the truth” and (2) without the allegedly false statement, the warrant affidavit is not sufficient to support a finding of probable cause. Id. at 155-56, 171, 98 S.Ct. 2674. And if, at hearing, the defendant establishes those elements, the search warrant must be voided and the fruits of the search excluded from evidence. Id. at 156, 98 S.Ct. 2674.
Here, Lunsford admitted that his search warrant affidavit contained a deliberate falsehood: The confidential informant he identified in the affidavit in fact “had no connection to the case.” J.A. 65. Thus, the confidential informant listed on the search warrant affidavit clearly did not: report Defendant as a narcotics distributor; provide Lunsford with Defendant’s physical description, address, or vehicle information; or identify Defendant in a photograph. Lunsford later identified another individual as “the real informant[.]” J.A. 65. Yet Lunsford did not indicate that that individual actually provided all of the information on the search warrant affidavit. And regardless, the record in this case shows that the confidential informant listed on the search warrant affidavit did not provide all of the above-mentioned information. Without that information, a district court could reasonably conclude that Lunsford’s search warrant affidavit failed to establish probable cause. Indeed, the district court here concretely stated *469 that Defendant’s efforts to suppress may well have been successful.
Further, even if Defendant’s suppression efforts were not successful, there is a reasonable probability that knowledge of Lunsford’s criminal misconduct would have changed Defendant’s decision to plead guilty. As Defendant’s attorney explained, even if Defendant lost at a Franks hearing, “I would have advised [Defendant] that a key consideration in deciding whether to enter a guilty plea or proceed to trial was the role that Officer Lunsford’s credibility would play at trial.” J.A. 122.
In sum, we conclude that Defendant has shown a reasonable probability that he would not have pled guilty, had he known about Lunsford’s criminal misconduct. And because we conclude that Lunsford’s misconduct renders Defendant’s plea involuntary under Brady v. United States, we need not, and therefore do not, address whether the government violated its Brady v. Maryland disclosure obligations.
III.
Given the totality of the circumstances of this case — a law enforcement officer intentionally lying in a affidavit that formed the sole basis for searching the defendant’s home, where evidence forming the basis of the charge to which he pled guilty was found — Defendant’s plea was involuntary and violated his due process rights. Under these egregious circumstances, Defendant was “deceived into making the plea, and the deception prevents his act from being a true act of volition.” Lassiter v. Turner, 423 F.2d 897, 900 (4th Cir.1970) (citation omitted). The district court therefore erred by denying Defendant’s motion to vacate his plea under 28 U.S.C. § 2255, and we accordingly reverse.[3]
Our decision to vacate Defendant’s plea is supported by the important interest of deterring police misconduct. See e.g. Franks, 438 U.S. at 165-66, 98 S.Ct. 2674 (applying the exclusionary rule to deter deliberate or reckless untruthfulness in warrant affidavits); Stone v. Powell, 428 U.S. 465, 492, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (stating that “[ejvidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease”). If a defendant cannot challenge the validity of a plea based on subsequently discovered police misconduct, officers may be more likely to engage in such conduct, as well as more likely to conceal it to help elicit guilty pleas. See Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir.1995) (stating that “if a defendant may not raise a Brady [v. Maryland ] claim after a guilty plea, prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas”).
Further, Defendant should not be penalized because he did not discover Luns-ford’s misconduct earlier. In another case involving similar misconduct by Lunsford, Lunsford falsely identified a confidential informant in an affidavit supporting a criminal complaint charging a suspect with possession of a firearm by a felon. Luns-ford averred that the confidential informant — who in reality had “no involvement whatsoever in the investigation” — identified the suspect as a narcotics supplier, reported seeing the suspect with a handgun and selling narcotics, and confirmed the suspect’s identity with a photograph. J.A. 61-62. The suspect was subsequently indicted and pled guilty to the firearms charge. But the suspect had not yet been sentenced at the time of Lunsford’s arrest. *470 Based on Lunsford’s misconduct, the government allowed the suspect to plead to a less serious offense, and he received a sentence of forty-eight months in prison. The only difference between that case and Defendant’s is that Defendant did not learn of Lunsford’s misconduct until after sentencing.
Finally, allowing a defendant’s guilty plea to stand when a police officer intentionally lies in a search warrant affidavit undermines public confidence in our judicial system. “Whether to prosecute, issue a warrant, indict and convict are serious matters that are decided in large measure based on what a police officer relates. So when an officer does not tell the whole truth, public confidence in the fair administration of criminal justice inevitably is eroded.” United States v. Gribben, 984 F.2d 47, 48 (2d Cir.1993).

REVERSED.

. To lessen the likelihood of confusion, we refer to each Brady opinion by its full name.

. In Ruiz, the Supreme Court held that the government’s failure to disclose material impeachment evidence prior to a criminal defendant's guilty plea did not render the plea involuntary. 536 U.S. at 628, 122 S.Ct. 2450. Ruiz did not, however, address evidence beyond that for impeachment purposes, and as the First Circuit noted, "the prosecution’s failure to disclose evidence may be sufficiently outrageous to constitute the sort of impermissible conduct that is needed to ground a challenge to the validity of a guilty plea.” Ferrara, 456 F.3d at 291 (citations omitted). Notably, however, this case centers not on a Brady v. Maryland failure to disclose but rather on something categorically different: affirmative misrepresentations.

. This opinion does not preclude the government from retrying Defendant on both the charge to which he pled guilty and the charge that was dismissed in return for his plea.