# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40772

United States Court of Appeals
Fif h Circuit

**FILED**

June 26, 2017

Lyle W. Cayce
Clerk

GEORGE ALVAREZ,

      Plaintiff - Appellee

v.

THE CITY OF BROWNSVILLE,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JOLLY and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellee George Alvarez pleaded guilty to assault on a public servant in Texas state court. Several years later, the Texas Court of Criminal Appeals held that he was "actually innocent" of the assault and set aside his conviction. Alvarez subsequently filed suit in federal court against the City of Brownsville ("City") and several law enforcement officers under 42 U.S.C. § 1983, asserting, *inter alia*, a claim against the City grounded in *Brady v. Maryland*.[1] The district court granted summary judgment for Alvarez, concluding as a matter of law that the City violated his constitutional rights

---

[1] *See generally Brady v. Maryland*, 373 U.S. 83 (1963).

No. 16-40772

under *Brady*. After a damages-only trial, a jury awarded Alvarez $2 million. The City appeals. We reverse and render judgment of dismissal in favor of the City.

## I.
### FACTS AND PROCEEDINGS

In November 2005, the Brownsville Police Department ("BPD") arrested Alvarez on suspicion of burglary and public intoxication, then placed him in a holding cell. After an altercation at the jail, Detention Officer Jesus Arias pressed charges against Alvarez "for assaulting him and causing him pain." Alvarez was charged with assault on a public servant, a third-degree felony. He pleaded guilty in state court in May 2006 and was given a suspended sentence of eight years of imprisonment and a sentence of ten years of community supervision. As a condition of community supervision, the court imposed "a term of confinement and treatment in a substance abuse felony punishment facility . . . for not less than 90 days or more than 12 months[.]" Alvarez did not complete the treatment program, so the court revoked his suspended sentence and ordered him to serve eight years of imprisonment.

Several years later, videos of the altercation between Arias and Alvarez were discovered in the course of a separate § 1983 case with similar facts filed by another detainee against the City and Arias. In May 2010, Alvarez filed a writ of habeas corpus in state court, contending that the newly discovered videos—which, he claimed, BPD had withheld in violation of *Brady*—demonstrated that he was "actually innocent" of the alleged assault. After concluding that "there is a reasonable probability that, had the evidence been disclosed, the outcome of [Alvarez's] case would have been different," the state district court recommended that the writ be granted and that Alvarez be given a new trial. Based on the state district court's findings of fact and its "own independent examination of the record," the Texas Court of Criminal Appeals

concluded in October 2010 that Alvarez was "actually innocent of committing the offense in this cause." That court set aside his conviction for assault on a public servant. One week later, the state district court granted the state's motion to dismiss all charges against Alvarez.

The following April, Alvarez filed this suit under § 1983 against the City, Arias, jail supervisor Sergeant David Infante, Chief of Police Carlos Garcia, Lieutenant Henry Etheridge, Jr., and Police Commander Roberto Avitia, Jr. Alvarez's pleadings asserted, *inter alia*, claims for fabrication of evidence and nondisclosure of exculpatory evidence under the *Brady* doctrine.

The defendants filed a motion for summary judgment in August 2012, seeking dismissal of all of Alvarez's claims. Adopting the magistrate judge's report and recommendation, the district court denied the defendants' motion as to (1) the *Brady* claim against the City for nondisclosure of exculpatory evidence, and (2) the claim against Arias in his individual capacity for fabrication of evidence. The court granted summary judgment dismissing all of Alvarez's other claims and later dismissed the remaining claim against Arias pursuant to Alvarez's voluntary stipulation of dismissal.

Alvarez and the City filed cross-motions for summary judgment in January 2014, addressing the three remaining issues identified by the district court: (1) whether a BPD policy of nondisclosure existed; (2) whether the BPD's failure to disclose the videos constituted a *Brady* violation; and (3) whether a BPD policy caused the *Brady* violation. The court granted Alvarez's motion for summary judgment and denied the City's, concluding that "Alvarez has established all substantive elements of a § 1983 municipal liability claim [under *Brady*] against the City[.]"

The district court held a two-day jury trial in September 2014 limited to the quantum of damages. The jury awarded Alvarez $2 million in compensatory damages. The parties agreed to attorneys fees of $300,000, and

## No. 16-40772

the court entered final judgment in favor of Alvarez in the amount of $2.3 million. The City subsequently filed a motion for judgment as a matter of law or, alternatively, for new trial or remittitur, which the court denied. The City timely appealed.

## II.
### ANALYSIS

As a threshold matter, the City contends that the district court should have granted summary judgment in its favor because Alvarez's guilty plea precluded him from asserting a *Brady* claim as a matter of law. The City's claim raises a pure question of law, so we review its challenge de novo.[2]

We have held, in the contexts of direct appeals and habeas corpus, that a defendant who pleads guilty waives the right to assert a *Brady* claim. In *Matthew v. Johnson*, a habeas case, we held that the withholding of *Brady* material does not render a guilty plea invalid or involuntary.[3] We reasoned in *Matthew* that, "[b]ecause a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation."[4] We explained that the purpose of the *Brady* doctrine is to ensure that the defendant has a fair trial and concluded that *Brady*'s "focus on protecting the integrity of trials suggests that where no trial is to occur, there may be no constitutional violation."[5] Relying on *Matthew*, subsequent panels of this court

---

[2] *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 423 (5th Cir. 2006) (citing *Randel v. U.S. Dep't of the Navy*, 157 F.3d 392, 395 (5th Cir.1998)).

[3] 201 F.3d 353, 366–67 (5th Cir.), *cert. denied*, 531 U.S. 830 (2000).

[4] *Id.* at 361–62.

[5] *Id.* at 361; *see also Orman v. Cain*, 228 F.3d 616, 617, 620–21 (5th Cir. 2000) (reiterating the holding of *Matthew* "that *Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant

4

have rejected appellants' challenges on direct appeal to their guilty-plea convictions on the basis that the pleas were unknowing and involuntary because the government withheld exculpatory evidence.[6]

The Supreme Court has not yet addressed whether a defendant who pleads guilty has a constitutional right to *exculpatory* evidence, but it has held that defendants who plead guilty have no such right to *impeachment* evidence.[7] In *United States v. Ruiz*, the government had proposed a "fast-track" plea agreement under which it would recommend a downward departure if the defendant pleaded guilty and agreed to, *inter alia*, waive her right to receive impeachment evidence.[8] After she refused to waive that right, the government withdrew its offer.[9] The defendant nevertheless pleaded guilty without an agreement, and the district court denied her request for the downward departure that the government would have recommended under the "fast-track" plea agreement.[10]

The Supreme Court held that "the Constitution does not require the Government to disclose material *impeachment* evidence prior to entering a plea

---

waives trial and pleads guilty" and rejecting the petitioner's argument that the state's failure to disclose exculpatory materials before he pleaded guilty was grounds for habeas relief).

[6] *United States v. Hooper*, 621 F. App'x 770, 770 (5th Cir. 2015) (per curiam) ("[The defendant] argues that his guilty plea was unknowing and involuntary because the Government withheld exculpatory sentencing evidence regarding the amount of methamphetamine for which he was accountable. . . . [The defendant's] guilty plea precludes him from raising a claim that the Government failed to disclose exculpatory evidence in violation of *Brady* . . . , and his argument is foreclosed by circuit precedent."), *cert. denied*, 136 S. Ct. 894 (2016); *United States v. Britton-Harr*, 578 F. App'x 444, 444–45 (5th Cir. 2014) (per curiam) (same); *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) (per curiam) (same), *cert. denied*, 559 U.S. 941 (2010); *United States v. Santa Cruz*, 297 F. App'x 300, 301 (5th Cir. 2008) (per curiam) (same).

[7] *United States v. Ruiz*, 536 U.S. 622, 633 (2002).

[8] *Id.* at 625.

[9] *Id.*

[10] *Id.* at 625–26.

agreement with a criminal defendant."[11] The Court reasoned that "impeachment information is special in relation to the *fairness of a trial,* not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')."[12] The Court did not address whether the withholding of *exculpatory* evidence during the pretrial plea bargaining process would violate a defendant's constitutional rights because the proposed plea agreement in *Ruiz* had specified that "the Government will provide 'any information establishing the factual innocence of the defendant.'"[13] That specification, the Court decided, "along with other guilty-plea safeguards diminishes the force of [the defendant's] concern that, in the absence of impeachment information, innocent individuals, accused of crimes, will plead guilty."[14]

As the Seventh Circuit has recognized, the Court's reasoning in *Ruiz* "indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence. Given this distinction, it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea."[15]

An earlier panel of this court, in *United States v. Conroy*, rejected the distinction between exculpatory evidence and impeachment evidence, stating

---

[11] *Id.* at 633 (emphasis added).

[12] *Id.* at 629 (alteration in original) (citation omitted).

[13] *Id.* at 631.

[14] *Id.* (citation omitted).

[15] *McCann v. Mangialardi*, 337 F.3d 782, 787–88 (7th Cir. 2003) (citing *Ruiz*, 536 U.S. at 630, 631); *see also United States v. Moussaoui*, 591 F.3d 263, 286 (4th Cir. 2010), *as amended* (Feb. 9, 2010) ("To date, the Supreme Court has not addressed the question of whether the *Brady* right to *exculpatory* information, in contrast to *impeachment* information, might be extended to the guilty plea context.").

6

that "*Ruiz* never makes such a distinction nor can this proposition be implied from its discussion."[16] Denying the defendant's contention that exculpatory evidence must be turned over before the entry of a plea, the *Conroy* panel held that the defendant's guilty plea "precludes her from claiming that the government's failure to disclose [exculpatory evidence] was a *Brady* violation."[17] *Conroy* thus extended the impeachment evidence holding of *Ruiz* to cover exculpatory evidence as well, and we are bound by that decision.

Importantly here, collaterally attacking the voluntariness of a guilty plea in a criminal case on the basis of an alleged *Brady* violation is materially distinct from seeking civil damages against officials for violating a defendant's *Brady* rights after a criminal conviction has already been overturned. Unlike the petitioners in *Matthew* and *Conroy*, Alvarez is not attacking the validity of his plea to get his conviction overturned: Rather—now that his conviction has been overturned—Alvarez is raising a *Brady* claim to hold the City liable for damages under § 1983 for withholding *Brady* material.

Nevertheless, to prevail on his § 1983 claim, Alvarez must first show a violation of the Constitution.[18] To establish a constitutional violation under the *Brady* doctrine, a plaintiff must demonstrate, *inter alia*, that the withheld evidence is either impeaching or exculpatory.[19] Under *Ruiz*, Alvarez did not have a constitutional right to impeachment evidence when he pleaded guilty. Likewise, under this court's interpretation of *Ruiz* in *Conroy*, Alvarez did not have a constitutional right to exculpatory evidence when he pleaded guilty. Accordingly, Alvarez's guilty plea precludes him from asserting a *Brady* claim

---

[16] *Conroy*, 567 F.3d at 179.

[17] *Id.*

[18] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252 (5th Cir. 2005).

[19] *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Burge v. St. Tammany Par.*, 336 F.3d 363, 371 (5th Cir. 2003).

No. 16-40772

under § 1983. As that result disposes of his case, we need not reach the City's remaining arguments on appeal.[20]

## III.
### CONCLUSION

The judgment is REVERSED, and Alvarez's action against the City is DISMISSED with prejudice.

---

[20] *See Estrada v. Healey*, 647 F. App'x 335, 338 n.3 (5th Cir.) (per curiam) (noting in dicta that the plaintiff in this § 1983 action "waived his right to raise a *Brady* violation when he pleaded guilty" (citing *Conroy,* 567 F.3d at 178; *Matthew,* 201 F.3d at 361–62)), *cert. denied*, 137 S. Ct. 226 (2016). *But see United States v. Fisher*, 711 F.3d 460, 469 (4th Cir. 2013) ("If a defendant cannot challenge the validity of a plea based on subsequently discovered police misconduct, officers may be more likely to engage in such conduct, as well as more likely to conceal it to help elicit guilty pleas."); *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) ("[I]f a defendant [cannot] raise a *Brady* claim after a guilty plea, prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas.").