**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-6055**

———————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

JAMES SCOTT ERVIN, JR.,

        Defendant – Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:16-cr-00233-MOC-DCK-1; 3-20-cv-0009-MOC)

———————

Argued:  January 29, 2025                         Decided:  March 14, 2025

———————

Before WILKINSON, HARRIS, and RUSHING, Circuit Judges.

———————

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Harris and Judge Rushing joined.

———————

**ARGUED:** Brent Evan Newton, Gaithersburg, Maryland, for Appellant.  Elizabeth Margaret Greenough, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

———————

WILKINSON, Circuit Judge:

James Ervin pleaded guilty to possessing a semi-automatic rifle as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He later sought to withdraw his guilty plea in a 28 U.S.C. § 2255 motion to vacate, which the district court denied. On appeal, Ervin requests that we reverse the district court and vacate his plea for two reasons. First, he argues that he received ineffective assistance of counsel at his guilty plea. Second, Ervin contends that the government induced his guilty plea by providing untrue inculpatory information about the rifle. Both of Ervin's claims hinge on his interpretation of the phrase "in or affecting commerce" in § 922(g). Because we hold that Ervin's interpretation is contrary to the plain meaning of the statute, we reject both claims and affirm the denial of his motion to vacate.

I.

In May 2016, Ervin got into an argument with several men in North Carolina. He retrieved a semi-automatic rifle and fired at them. After responding to a 911 call, officers saw Ervin holding the loaded rifle and later arrested him. J.A. 175.

Ervin was charged in the Western District of North Carolina with possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). The indictment alleged that Ervin, having been previously convicted of a felony, possessed a Ruger semi-automatic rifle "in and affecting commerce." Advised by counsel, Ervin pleaded guilty in March 2017, without a plea agreement. The court proceeded through the catechism of Rule 11. Ervin stated he was satisfied with his attorney, and the court found a factual basis for his plea and concluded that he made it "knowingly and voluntarily." J.A. 15, 17–19, 27–29, 175–76.

2

Ervin was sentenced in November 2017. The presentence report (PSR) determined that he was an armed career criminal under 18 U.S.C. § 924(e) because of several prior violent felony convictions. Because Ervin pleaded guilty, the PSR also recommended a 3-level reduction for acceptance of responsibility. His guidelines range was 188 to 235 months, and the court sentenced him to 188 months in prison. At the hearing, the court noted that Ervin had drawn an "excellent attorney." J.A. 49, 53, 177–78, 233.

Ervin appealed his sentence as procedurally unreasonable. This court affirmed, and the Supreme Court denied certiorari in March 2019. *United States v. Ervin*, 729 F. App'x 268 (4th Cir. 2018); *Ervin v. United States*, 586 U.S. 1255 (2019) (mem.).

While incarcerated, Ervin learned that before his guilty plea, the government had provided his counsel a report about the rifle from the Bureau of Alcohol, Tobacco, Firearms and Explosives (the ATF report). That report stated that the firearm Ervin pleaded guilty to possessing in North Carolina had been manufactured *outside of* North Carolina and therefore met the interstate nexus element of § 922(g)(1), which requires that the firearm be possessed "in or affecting commerce." But Ervin separately discovered that the Ruger rifle had, in fact, been manufactured in North Carolina. J.A. 100–01, 173.

Appearing *pro se* Ervin filed a motion to vacate his conviction under 28 U.S.C. § 2255, which he supplemented and amended several times. Among several other claims, he argued that he received ineffective assistance of counsel because his attorney failed to investigate the origin of the firearm and that his guilty plea was therefore unconstitutional. J.A. 178–81.

3

In response, the government provided additional information from ATF stating that after the firearm was manufactured in North Carolina, it was shipped to a wholesaler in Louisiana before returning to North Carolina. In rejecting Ervin's motion to vacate, the district court noted that because of this shipment from North Carolina to Louisiana, Ervin's argument that the rifle never traveled in interstate commerce was wrong. The district court therefore held that Ervin's ineffective assistance claim failed because he could not establish prejudice. The court denied his § 2255 motion and his request for a certificate of appealability. J.A. 158, 181–82, 184–87, 193.

Ervin filed a motion for reconsideration in the district court. In that proceeding, the government supplied additional evidence from ATF that the rifle Ervin possessed not only traveled from the manufacturer in North Carolina to a wholesaler in Baton Rouge, Louisiana, but then from Louisiana to a retail distribution center in Jeffersonville, Georgia, before returning to North Carolina and eventually being possessed by Ervin. The district court denied his motion for reconsideration. J.A. 222, 224, 228.

Ervin, now advised by counsel, moved this court for a certificate of appealability, which we granted. On appeal, Ervin argues that the district court erred in denying his § 2255 motion to withdraw his guilty plea for two reasons. First, he contends that his trial counsel provided ineffective assistance in violation of the Sixth Amendment by failing to investigate the rifle's state of manufacture. Second, Ervin argues that his guilty plea was constitutionally invalid under the Fifth Amendment's Due Process Clause because the government provided his counsel with untrue inculpatory information about the rifle. As Ervin has acknowledged, both of these claims hinge on his interpretation of "in or affecting

4

commerce" in § 922(g), *see* Oral Arg. at 0:09–0:38, 4:40–5:01, which he offers for the first time in this appeal. Because his interpretation of the statute is incorrect, we reject Ervin's request to withdraw his guilty plea and affirm the district court's denial of his motion to vacate.

II.

In reviewing the denial of a § 2255 motion to vacate, we evaluate the district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

III.

A.

Ervin first argues that his guilty plea is invalid because his trial counsel provided ineffective assistance in violation of his Sixth Amendment right to counsel. To establish ineffective assistance, Ervin must make two showings: deficient performance and prejudice. First, he must show that "his attorney's performance 'fell below an objective standard of reasonableness.'" *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Second, he must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). To satisfy the prejudice prong, Ervin "must convince the court" that pleading not guilty and insisting on trial "would have been rational under the circumstances" and "objectively reasonable." *Id.* at 260 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). Ervin must overcome a "high bar," especially because "the strong

5

societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" *Lee v. United States*, 582 U.S. 357, 368–69 (2017) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

Ervin contends that his trial attorney's performance was deficient because he failed to investigate the history of the firearm before advising Ervin to plead guilty. Ervin asserts that his attorney was wrong to rely on the ATF report, which stated that the rifle was manufactured outside of North Carolina.

Next, Ervin argues that he was prejudiced by this failure to question the ATF report and investigate further. Under Ervin's interpretation of the felon-in-possession statute, if a firearm is manufactured in one state, travels outside of that state, but then *returns* to the original state, it does not meet § 922(g)(1)'s "in or affecting commerce" jurisdictional element. In turn, Ervin claims that had he known the rifle he possessed had been manufactured in North Carolina, he would have pleaded not guilty because the firearm's travel to Louisiana and Georgia before returning to North Carolina was insufficient to satisfy the commerce element of § 922(g)(1). Ervin's prejudice argument thus turns on his interpretation of "in or affecting commerce" in § 922(g)(1), which we now address.

## B.

Section 922(g) makes it unlawful for certain individuals, including those previously convicted of a felony, to commit three types of acts with a firearm:

> to *ship or transport* in interstate or foreign commerce, or *possess* in or affecting commerce, any firearm or ammunition; or to *receive* any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

6

18 U.S.C. § 922(g) (emphasis added). Ervin pleaded guilty to "possessing" a firearm "in or affecting commerce," so we focus on that part of the statute.

Section 922(g) is the result of a 1986 "consolidation" of three separate provisions. *United States v. Langley*, 62 F.3d 602, 604 (4th Cir. 1995) (en banc), *abrogated on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019). In one of these predecessor statutes, 18 U.S.C. § 1202(a), Congress had criminalized possession of a firearm by a felon "in commerce or affecting commerce." By using the phrase "in commerce or affecting commerce," "Congress sought to reach possessions broadly" using its powers under the Commerce Clause. *Scarborough v. United States*, 431 U.S. 563, 577 (1977); *see also United States v. Gillies*, 851 F.2d 492, 493 (1st Cir. 1988) (Breyer, J.) ("[T]he words 'affecting commerce' are jurisdictional words of art, typically signalling a congressional intent to exercise its Commerce Clause power broadly, perhaps as far as the Constitution permits."). The Supreme Court in *Scarborough* held that all that was required "to satisfy the statutorily required nexus between the possession of a firearm" and "commerce" was that "the possessed firearm previously traveled in interstate commerce." 431 U.S. at 564, 578. Under this broad definition of "in commerce or affecting commerce," Ervin's rifle clearly qualifies because it was shipped from North Carolina to Louisiana, then from Louisiana to Georgia, and again from Georgia to North Carolina—all before Ervin possessed it. Ervin himself concedes that the weapon traveled in interstate commerce under *Scarborough*. *See* Oral Arg. at 35:30–36:45.

When Congress consolidated § 1202(a) into § 922(g), it used nearly identical language, prohibiting possession "in or affecting commerce." We see no reason to conclude

7

that "in or affecting commerce" in § 922(g) means anything different from what "in commerce or affecting commerce" meant in the predecessor statute. When "a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *Hall v. Hall*, 584 U.S. 59, 73 (2018) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 537 (1947)).

Nothing in the statutory text indicates that Congress rejected *Scarborough*. *See Gillies*, 851 F.2d at 495 ("We have no good reason to think that Congress, when picking up the language of [§ 1202(a)], intended to reject *Scarborough*'s authoritative interpretation."); *United States v. Fitzhugh*, 984 F.2d 143, 146 (5th Cir. 1993) ("Against the backdrop of *Scarborough*, the inclusion in section 922(g)(1) of interstate commerce language almost identical to that found in section 1202(a) suggests intent to continue the former statute's broad reach."). We therefore read "in or affecting commerce" in § 922(g) as broadly as the Supreme Court read the almost identical term in *Scarborough*.

We have done this repeatedly, holding that § 922(g), like § 1202(a) in *Scarborough*, bars possession when "the firearm had travelled in interstate or foreign commerce at some point during its existence." *Langley*, 62 F.3d at 606; *see also United States Hobbs*, 136 F.3d 384, 390 (4th Cir. 1998). "[M]ere transportation across state lines" is sufficient. *United States v. Smoot*, 690 F.3d 215, 223 (4th Cir. 2012) (quoting *United States v. Gallimore*, 247 F.3d 134, 138 (4th Cir. 2001)).

Other circuits have read it the same way, holding that § 922(g)'s bar on possession requires only that the firearm previously crossed state lines. *See, e.g.*, *Gillies*, 851 F.2d at

8

494–95; *United States v. Garcia*, 94 F.3d 57, 65 (2d Cir. 1996); *United States v. Singletary*, 268 F.3d 196, 200 (3d Cir. 2001); *Fitzhugh*, 984 F.2d at 146; *United States v. Lewis*, 100 F.3d 49, 52 (7th Cir. 1996).

And as we have explained, it is undisputed that the Ruger rifle here traveled in interstate commerce—from North Carolina to Louisiana to Georgia to North Carolina—before Ervin possessed it.

To escape this conclusion, Ervin points to a statutory definition of "interstate or foreign commerce" that he claims constrained the meaning of "in or affecting commerce" after the consolidation of § 1202(a) into § 922(g). Section 921(a)(2) defines "interstate or foreign commerce" as used in § 922(g) as follows:

> The term "interstate or foreign commerce" includes commerce between any place in a State and any place outside of that State, or within any possession of the United States (not including the Canal Zone) or the District of Columbia, but *such term does not include commerce between places within the same State but through any place outside of that State.*

18 U.S.C. § 921(a)(2) (emphasis added). Ervin's argument proceeds in two steps. First, he contends that this definition of "interstate or foreign commerce" also applies to the standalone term "commerce" as used in the phrase "in or affecting commerce." Second, he claims that the statutory definition's exception applies here: the Ruger rifle did not, he argues, travel in "interstate or foreign commerce" as defined by § 921(a)(2) because after its manufacture in North Carolina and subsequent travel from North Carolina to Louisiana and Georgia, it *returned* to North Carolina and thus traveled in "commerce between places within the same State but through [places] outside of that State."

9

We disagree with Ervin at both steps. At step one, the definition of the statutory term "interstate or foreign commerce" does not also define the independent term "commerce." The statutory text itself explains why. The relevant term in § 922(g) is "in or affecting *commerce*." The definition Ervin points to defines a different term, namely "interstate or foreign commerce." Nothing in the statute instructs us to apply this definition also to "commerce." Furthermore, Congress used the specific term "interstate or foreign commerce" in § 922(g) when it prohibited shipment, transportation, and receipt of a firearm. But when it prohibited *possession* of a firearm, it did not. Congress instead chose to continue using the term "commerce" without any modifiers, as in § 1202(a). *See Singletary*, 268 F.3d at 199 ("Notably, however, Congress did not use the phrase 'in interstate or foreign commerce' when it criminalized possession. Instead, Congress merely employed the phrase 'in or affecting commerce.'"). And we typically presume that when Congress uses different terms, those terms convey different meanings. *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018).

We therefore conclude that § 921(a)(2)'s definition of "interstate or foreign commerce" does not apply to the term "commerce." Rather, as we held earlier, the phrase "in or affecting commerce" in § 922(g) maintains the broad meaning consistently recognized by courts since *Scarborough*. As long as the weapon has previously traveled in interstate or foreign commerce, as delimited by Congress's constitutional ability to regulate commerce, the jurisdictional nexus is satisfied.

Even if we were to agree with Ervin that § 921(a)(2)'s definition of "interstate or foreign commerce" also defines "commerce," possession of the rifle here would *still* be

10

unlawful. The definition in § 921(a)(2) excludes "*commerce* between places within the same State but through any place outside of that State." The rifle here was manufactured in North Carolina, sold to a wholesaler in Louisiana, and then sold to a retailer in Georgia, before ending up in North Carolina. There was no single commercial transaction *between* two places in North Carolina that happened to take the firearm temporarily outside of the state. Rather, these were separate *interstate* commercial transactions that brought the weapon back to its state of manufacture. Even under Ervin's desired definition, the rifle met the interstate nexus requirement.

C.

Because the linchpin of Ervin's prejudice argument falters, we reject his claim of ineffective assistance of counsel. Ervin argues that "had [he] been advised that the Ruger firearm had never traveled in 'commerce' within the meaning of § 921(a)(2), [he] would not have pleaded guilty" and would have insisted on going to trial. Opening Br. at 23–24.

But his interpretation of § 922(g) and reliance on § 921(a)(2) are erroneous under the plain text of the statute and are in tension with decades of precedent. Thus Ervin's purported defense at trial—that a rifle that crossed state lines three times never traveled in "commerce"—stood "virtually no chance to succeed on the merits." *Meyer v. Branker*, 506 F.3d 358, 370 (4th Cir. 2007). He has failed to "convince[] us that an objective defendant would have insisted on going to trial." *Id.*; *see also Fugit*, 703 F.3d at 260–61. It would not have been "rational under the circumstances" for a defendant to forgo a 3-level reduction

11

for acceptance of responsibility, which reduced his guidelines range by over 6 years, to pursue a meritless actual innocence defense. J.A. 233; *see* U.S.S.G. ch. 5, pt. A.[1]

IV.

Ervin's due process claim is similarly resolved by the threshold statutory interpretation issue. Ervin argues that his plea was constitutionally invalid because he was provided with materially false, inculpatory evidence by the government in the ATF report that stated the rifle was manufactured outside of North Carolina. As with his ineffective assistance claim, Ervin contends that he would have pleaded not guilty and gone to trial had he received an accurate report and therefore known that the firearm never traveled in "commerce" within the meaning of § 922(g). Because his interpretation of § 922(g) is incorrect and the weapon readily met the statute's required commerce nexus, his due process argument also fails.[2]

We apply a two-part test to claims of government misconduct in the guilty plea context. First, Ervin "must show that impermissible government conduct occurred." *United States v. Fisher*, 711 F.3d 460, 465 (4th Cir. 2013). Second, he must establish prejudice,

---

[1] Because Ervin fails to establish prejudice, we "need not even consider the performance prong." *United States v. Rhynes*, 196 F.3d 207, 232 (4th Cir. 1999), *vacated in part on other grounds*. Our focus on prejudice does not mean to imply that counsel's performance was deficient. Ervin's counsel advised him to plead guilty in the face of overwhelming evidence of guilt, which secured him a large sentence reduction.

[2] The government argues that Ervin's due process claim alleging government misconduct was not properly preserved in the district court and is both time-barred and procedurally defaulted. We assume here that the claim is properly before us, and we reject it on the merits.

12

namely "that the misconduct induced him to plead guilty." *Id.* at 467. Our test under the second prong is similar to the prejudice test for ineffective assistance. Ervin "must show 'a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Ferrara v. United States*, 456 F.3d 278, 294 (1st Cir. 2006)). We "take an objective approach to determining reasonable probability" and "look to 'all of the relevant circumstances surrounding' the plea." *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 749 (1970)). The "defendant's reliance on a misrepresentation by the Government must 'strike[] at the integrity of the prosecution as a whole.'" *United States v. Paylor*, 88 F.4th 553, 561 (4th Cir. 2023) (quoting *Fisher*, 711 F.3d at 466).

Like his ineffective assistance claim, Ervin's misconduct claim fails the prejudice prong.[3] He argues that a "reasonable defendant in [his] shoes would have pleaded not guilty if he had been told that the firearm never traveled in 'commerce' within the meaning of § 921(a)(2)." Opening Br. at 16. Again, Ervin misconstrues §§ 922(g) and 921(a)(2). An accurate ATF report would have revealed that the rifle traveled in interstate commerce, and therefore easily satisfied § 922(g), when it was shipped from North Carolina to Louisiana to Georgia and back to North Carolina. Although our inquiry does not require Ervin to demonstrate that he "undoubtedly would have prevailed" under his purported defense, *Paylor*, 88 F.4th at 562 (quoting *Fisher*, 711 F.3d at 468), likelihood of success informs our analysis of what a *reasonable* defendant in his shoes would have done. Because his

---

[3] In addition, the district court made no finding of any government misconduct.

13

purported defense would have been incompatible with the plain text of the statute, in tension with precedent, and ultimately meritless, Ervin has failed to convince us "that a reasonable defendant standing in his shoes likely would have altered his decision to plead guilty," *id.* at 561 (quoting *Fisher*, 711 F.3d at 467), especially in light of the over 6-year guidelines reduction he received for pleading guilty.

## V.

The rifle Ervin possessed was a well-traveled weapon. Congress was well within its constitutional powers to criminalize its possession. And Congress did not unsettle the broad meaning of "in or affecting commerce" through the statutory definition of a different term. Because Ervin's threshold argument for both of his claims fails, we affirm the district court's denial of Ervin's motion to withdraw his guilty plea.

*AFFIRMED*